## Ramsey Estate

*John H. Davidson*, for plaintiffs.

*Harry D. Hamilton*, for heir.

*Ralph W. Peacock*, for Commonwealth.

*Michael A. Hanna*, for Washington County Commissioners and Washington County Institution District.

*Paul P. Posa*, guardian and trustee ad litem.

*Russell Z. Moninger* and *James R. Donaldson*, for other interested parties.

ANDERSON, P. J., March 22, 1955.—George M. Ramsey, also known as George McIlvaine Ramsey, being then a resident farmer of this county, died, testate, on April 13, 1902. His will which is of record in Will Book vol. 18, page 574, in the office of the register of wills of this county, reads as follows:

"Dec 24th 1901.

"After much consideration I make this my Last Will, thus revoking all previous wills.

"After payment of funeral expenses & collateral tax imposition, I will & bequeath to my niece Nancy Herriott McCloy one ($100) hundred dollars. To my nephew Paul Lemoine Allan Ramsey one ($1000)

thousand dollars. To my grand nephew Geo Ramsey Warrick ($1000) one thousand dollars to be paid to him when he is 21 years old. To my grand nephew Walter L. McCloy the copy rights & Plates of Cosmology & Philosophy of Phenomena also all my Letters & Manuscripts & correspondence whatsoever. To my grand niece Katharine Ramsey Chambers Warrich the remainder of my personal property except the Library & furniture and pictures in the two front rooms upstairs now occupied by me. Said property to remain in said upper rooms for use of those who may occupy them. I further will and bequeath to said niece all my real estate to be held by her in trust for her use & benefit during her life on earth.

"I also appoint said grand niece executor of the foregoing will. After which I will & bequeath to the corporation of Washington County, Pa. all my real estate in perpetuity to be held in trust for the use & benefit of indigent Orphans under fourteen (14) years of age who are lineal descendants of my Father Josiah Ramsey deceased.

"After the expiration of two (200) hundred years, indigent orphans of said age; born in said County shall become beneficiaries same as lineal descendants.

"The President Judge of the Orphans' Court shall appoint a farmer resident in South Strabane Township trustee & superintendent of said estate in trust, to hold office for five years unless removed for cause— who shall annually report to the Court all receipts & expenditures & shall receive a salary for said services not to exceed one hundred dollars a year as may be determined by the Court.

"The Farm shall be kept in good repair in harmony with the progress of the age.

"Relatives visiting the old Home shall be well entertained & expenses charged to the estate, such visits are limited to two days & one night.

"The Orphans may reside on the Farm or elsewhere as the trustee may determine & may Honesty, Industry & kindness abound.

Geo. M. Ramsey

Witness
   D. M. Donahoo
   L. McCarrell

"I, George M. Ramsey, the testator in the annexed will do hereby make and publish this codicil to be added to my last will and testament bearing the date the 24" day of December A. D. 1902. In the following manner to-wit: I give devise and bequeath to my niece Catharine Chambers Warrick, all of what is known as the Pittsburgh or River Vein of Coal underlying my farm of one hundred and thirty three acres more or less in South Strabane Township Washington County Penna with the right and privilege to enter in and upon said land to have the same excavated to be hers and her heirs and assigns forever.

"Witness my hand and seal this fifth day of April A. D. 1902.

Geo. M. Ramsey    seal

"Signed and sealed in our presence and declared the same to be a codicil to his last will and testament.

Etta Manon<br>D. M. Donahoo"

Letters on his estate were issued to his grandniece, the life tenant of his estate, and by her account filed at no. 55 August term, 1902, A. A. It appears that the entire personal estate of decedent was exhausted in the payment of obligations and expenses of the estate. Such life tenant took possession of the only real estate of decedent, being the premises involved in the partition proceedings later herein referred to, and retained possession thereof until her death on October 6, 1948. Since such time the farm has been under the supervision of a relative of decedent.

On July 11, 1954, several persons claiming to be some of the intestate heirs of decedent, and on the theory that the provisions of recited will as to disposition of the remainder interests in decedent's real estate were void, with resultant intestacy as to such remainder, instituted a proceedings in partition of such real estate at no. 1 of 1954, partition docket. On the return day of the citation issued in connection with such proceedings, the attention of the court was directed to the provisions of the will and the necessity of the court determining first, as a matter of law, whether an intestacy existed, before further steps in the partition proceedings could be taken.

Washington County, which, under the title of the "Corporation of Washington County", was devised the involved property in trust, has, acting through its board of commissioners, passed a resolution (a copy of which is filed with these proceedings) refusing to accept such trusteeship and asserting its belief that the provisions of the will creating a trust were void.

After a study of the pleadings, the court suggested that a guardian and trustee ad litem be appointed to represent unknown, unascertained and possibly incompetent interests, that the Attorney General of the Commonwealth be advised of the issue and given opportunity to appear in the proceedings and that all the parties by their counsel stipulate that no question would be subsequently raised as to the legal power of this court to dispose of such issue at this stage of, and in the course of such partition proceedings.

In conformity with such suggestion, Paul Posa, Esquire, of this bar, was appointed and entered his appearance as guardian and trustee ad litem; an appearance was authorized by, and entered for, the office of the Attorney General, and the suggested stipulation was filed and joined in by all such counsel.

The issue directly raised by such record is: Did testator die intestate as to the land involved or did a resultant trust arise in favor of his next of kin by reason of the fact that his disposition of the remainder of his estate by his will is legally void as being non-charitable and in violation of the rule against perpetuities?

It needs merely a reading of the provisions of the will to establish without doubt the fact that unless it be determined that the basic intent of testator is and can be sustained as charitable, it violates the rule against perpetuities, and may not be sustained as a private trust. Charity has been variously defined, but the definition generally accepted by the courts of this State as the best is:

" 'A charity in legal sense may be more fully defined as a gift to be applied consistently with existing laws for the benefit of an indefinite number, of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government' ": Centennial and Memorial Association of Valley Forge, 235 Pa. 206.

"Where the trust is for the benefit of needy descendants of the testator, however, or where it is a trust to educate his descendants, there is a conflict of opinion on the question whether a valid charitable trust is created. In England the courts have upheld such trusts. . . . In several cases in the United States it has been held that the class of beneficiaries is too narrow and that the intended trust fails": Scott on Trusts (second ed.), vol. 4, §375.3, page 2719.

If the purpose is so indefinite, so vague, that it could not be ascertained whether or not a particular

disposition would fall within it, the whole bequest might properly be held to fail for uncertainty, in which case, of course, a resulting trust would arise in favor of the next of kin: Scott on Trusts, vol. 2, §123, page 857.

"There is no good reason why a man who has acquired property should be permitted to make provision for the perpetual care or education of his descendants. . . . The same principles are applicable where a trust is created for the descendants of a person other than the testator himself": Scott on Trusts, vol. 4, §375.3, page 2721.

"When the beneficiaries of the trust are limited to such a small class of persons that the enforcement of the trust is not of benefit to the community, the trust is not a charitable trust even though the purpose of the trust is the relief of poverty or the advancement of education or religion or health. Thus, a trust to assist needy descendants of the settlor, or to educate descendants of the settlor, is not a charitable trust. On the other hand, a trust for the relief of poverty or the advancement of education which is not so limited, is none the less a charitable trust although by the terms of the trust preference is to be given to descendants of the settlor": Restatement of the Law of Trusts, vol. II, §375-c.

In Bogert on Trusts and Trustees, vol. 2A, §363, page 24, appears this statement: ". . . it is not believed that the purpose or motive of the settlor is an important element in the creation of a charity. The actual effect on society is the criterion. If his trust will confer a substantial benefit on the community, it should not matter whether the settlor created the trust out of spite, vanity, to satisfy a whim, or for other unsatisfactory reason. Furthermore, providing for relatives is not selfish, in the sense that it benefits the deceased settlor financially.

"It is believed that trusts to provide educational, eleemosynary, religious or other charitable benefits to the kinsmen of the settlor should be supported as charitable, if the court is convinced . . . that there is a public, community interest in seeing that the trust is carried out."

See also Archambault's Estate, 308 Pa. 549, in which case the testator directed that a fund be placed in trust to provide a free pew in a certain church. Such trust was held to be charitable, the court saying: "This is obviously a gift for the promotion of religious instruction, and in a Christian community cannot be considered other than charitable. . . . The mere fact that the gift in the instant case is intended as a memorial to the testator does not alter its public and charitable character."

Counsel for the Attorney General has furnished the court with an excellent brief but has not been able to furnish us with a single Pennsylvania authority in which a trust for indigent relatives of the testator is supported unless from the facts it appears that the public is benefited by the trust even though only to a limited extent.

Without considering whether the provision of the will involved, that relatives of decedent who visited the farm were to be royally entertained, being definitely a noncharitable provision, would of itself prevent the provision for the orphans being held to be a charity, there is no evidence whatever in the case that would support a finding that there exists in this case a public or community interest in seeing the provisions as to the relatives of testator being carried out.

In that connection it is well to note that in the recital of the known intestate heirs of decedent (who would be the heirs of testator's deceased brothers and sisters) there does not appear to be a known single orphan under the age of 14 years, nor that if there

were any such orphan that they are resident of this community and are indigent.

Counsel for the Attorney General's office also has suggested that by reason of the exceptionally large family of some of the lineal descendants of Jacob Ramsey, who died in 1835, having had 12 children, that it is reasonably conceivable that there could be a large group coming within the class of indigent orphans under 14 years of age. It may well be conceded that under the facts that the number of the lineal descendants of decedent's father may be and probably is large, but it, in our opinion, does not necessarily or logically follow that it may be assumed that there would be included among them a proportionately large number of indigent orphans under 14 years of age, living in this county, or within the boundaries of this Commonwealth, that would justify a finding or assumption that their care by means of the income from decedent's farm would be of material benefit to their community.

Because of the selfevident fact that testator's plan for the maintenance of his farm is entirely impracticable and could not be carried out as directed by him, it does not necessarily follow that this court, under the provisions of the several applicable acts of assembly, could not apply the cy pres doctrine and allot the trust fund to an existing and appropriate similar charitable purpose, but it may not do so when the trust is found to be noncharitable.

In consideration of the issue here the court has read and digested a great number of decisions of the appellate and lower courts of this State, and did not find a single decision which could be cited as justifying a finding that the trust directed to be established could be held to be a charitable trust.

And it seems of little importance whether the provision of the Act of July 7, 1885, P. L. 259, has been

"devitalized" by later acts, since, in any event, a finding that the provision for the orphan children of testator's ancestor is noncharitable creates an intestacy or resulting trust as to the remainder in the farm in the next of kin of decedent.

The provisions of testator's will that indigent orphans under 14 years of age, resident of this county, were to share in the benefits of the trust after a lapse of a period of 200 years following his death, fails as a charitable trust for such group since it would vest in the group at a period forbidden by the rules against perpetuities.

If the gift in the first instance is not for the benefit of a charity, a gift over at a period beyond that permitted by the rule against perpetuities, even though in favor of a charity, is also void. See Institution for Savings in Roxbury, etc., v. Roxbury Home for Aged Women, 244 Mass. 583, 139 N. E. 301. See also Stephan's Estate, 129 Pa. Superior Ct. 396, where the court says at page 406:

"But cy pres is applicable, if at all, only after it has been determined that the gift was made for a charitable or religious purpose. It cannot be invoked to transform a non-charitable into a charitable trust, nor to take the trust out of the operation of the rule against perpetuities."

And now, March 22, 1955, the court finds as

### Matters of Law

1. That the provisions of decedent's will as to the remainder interest in the recited farm are void as being noncharitable and in violation of the rule against perpetuities.

2. That the remainder interest in such tract of land being the tract involved in the present partition proceedings was vested in the heirs at law or next of kin of decedent as of the date of his death, subject to the estate of Catherine Ramsey Chambers Warrich.